James B. LUNSFORD; Regina T. Charboneau; and Bay Vista Enterprises, Inc., Plaintiffs,

v.

AMERICAN GUARANTEE & LIABIL-ITY INSURANCE COMPANY, and Does 1–10, Defendants.

No. C–91–1264 DLJ.

United States District Court, N.D. California.

Aug. 30, 1991.

Raymond C. Oleson, Sole Practitioner, San Francisco, for plaintiffs.

Paul E.B. Glad of Sonnenschein, Nath & Rosenthal, San Francisco, for defendants.

## ORDER

JENSEN, District Judge.

On August 28, 1991, this Court heard defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment. Paul E.B. Glad of Sonnenschein, Nath & Rosenthal appeared for defendant American Guarantee & Liability Insurance Company. Raymond C. Oleson appeared for plaintiffs James B. Lunsford, Regina T. Charboneau, and Bay Vista Enterprises, Inc. Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court GRANTS defendant's motion and DENIES plaintiffs' motion for the following reasons.

## I. BACKGROUND

This is an action alleging bad faith breach of an insurance contract for failure to defend the plaintiffs in a separate action. Defendant American Guarantee & Liability Insurance Company ("American") issued a liability insurance policy (the "Policy") to Bay Vista Enterprises, Inc. ("Bay Vista") providing coverage for "personal injury," which is defined in the policy as including "malicious prosecution." The present action focuses on this provision.

Bay Vista is a California corporation which, at all times relevant to the present action, operated a restaurant in San Francisco known as "Regina's Restaurant" or "Regina's at the Regis." Plaintiff James B. Lunsford is the President of Bay Vista and one of its directors and shareholders, and plaintiff Regina T. Charboneau is employed as the chef of Regina's Restaurant.

On or about November 3, 1989, Bay Vista filed a Complaint for Declaratory Relief and Malicious Prosecution ("Complaint") against the Maryland Hotel, Ltd. ("Maryland Hotel") in San Francisco Superior Court. Maryland Hotel operates The Regis Hotel in San Francisco, California, at which Regina's Restaurant is located. That action was subsequently removed to the United States Bankruptcy Court for the Northern District of California on or about December 4, 1989. At that time, Maryland Hotel also filed a Counterclaim in Adversary Proceeding No. 3–89–0597 TC against James Lunsford, Regina Charboneau, and Bay Vista Enterprises, Inc. The Counterclaim alleges various causes of action in contract, fraud, and tort stemming from Bay Vista's failure to perform its obligations under its lease with Maryland Hotel.

The Counterclaim also includes three causes of action for abuse of process based on Bay Vista's original Complaint and a Notice of Pending Action. Specifically, claims Ten and Eleven allege that the state court Complaint alleging claims of malicious prosecution against the Hotel was filed for an improper purpose, i.e., to intimidate the Hotel from pursuing its breach of lease claims, to exact concessions from the Hotel, and to disrupt the Hotel's business for the advantage of the insureds. *See* Counterclaim ¶¶ 67–78. Claim Twelve alleges that the insured served Maryland Hotel with a Notice of Pending Action ("Notice") on November 3, 1989, against Maryland Hotel's property, and that such Notice was served for the improper purpose of intimidating Maryland Hotel and disrupting its business, but that the Notice was not in fact recorded with the County Recorder. *Id.* ¶¶ 79–83. The Counterclaim does not allege that any of these proceedings were pursued to a legal termination in the Ho-

tel's favor, and there is nothing in the record before this Court establishing that those proceedings have been resolved against plaintiffs as of this date.

The Policy issued to Bay Vista effective during this period contained a Commercial General Liability Coverage section. The general "Insuring Agreement" of the Policy covering liability for bodily injury and property damage provided as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS–COVERAGES A AND B....* We will have the right and duty to defend any 'suit' seeking those damages.

*See.* Policy § I.A.1.a (emphasis added) (attached as Exhibit 1 to the Declaration of Lloyd Johnson (filed May 1, 1991)). Similarly, the "Insuring Agreement" of the Policy covering liability for personal and advertising injury provided as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of *'personal injury'* or 'advertising injury' to which this insurance applies. *No other obligation or liability to pay sums or Perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.* We will have the right and duty to defend and 'suit' seeking those damages.

*Id.* § I.B.1.a (emphasis added). Finally, the term "personal injury" is defined in the Policy as follows:

> 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. *Malicious prosecution;*
>
> c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
>
> e. Oral or written publication of material that violates a person's right of privacy.

*Id.* § V.10 (emphasis added).

On or about December 5, 1989, plaintiffs tendered the defense of the Counterclaim to American. After that time, a series of letters was exchanged between counsel for plaintiffs, Raymond C. Oleson ("Oleson") and representatives of American. Plaintiffs, relying on the California Court of Appeals decision in *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal. App.3d 598, 222 Cal.Rptr. 276 (1986), consistently maintained that Maryland Hotel's claims for abuse of process fell under the policy provisions regarding personal injury, and therefore American was bound to defend. In a six-page, single-spaced letter dated March 14, 1990, counsel for American set forth its "coverage opinion" of the Counterclaim, concluding that the abuse of process claims both in their characterization and their factual allegations failed to arise to a claim for malicious prosecution as they failed to establish or even infer that the original action giving rise to the abuse of process claims had terminated against the insureds and in Maryland Hotel's favor. Thus American concluded that under California law, the particular circumstances, and relevant law from other jurisdictions, Maryland Hotel could not assert, much less succeed, on a critical element of a malicious prosecution claim, i.e., the termination of the prior action in its favor. American also found the *CNA Casualty* case to be distinguished from the present. Based on the foregoing, American therefore declined to take up the tendered defense.

On March 15, 1991, plaintiffs filed the present action in San Francisco Superior Court, stating five causes of action: (1) breach of the covenant of good faith and fair dealing; (2) breach of an insurance contract; (3) claim for declaratory relief; (4) breach of fiduciary duty; and (5) attorney's fees incurred in the present motion.

On April 26, 1991, American filed a notice of removal to this Court on the basis of diversity jurisdiction. On May 1, 1991, American filed the present motion for summary judgment on all claims as to all plaintiffs, contending that the Hotel's claims for abuse of process do not fall within the Policy as they cannot constitute claims for malicious prosecution until the insureds' original claims are found against them. Plaintiffs filed a cross-motion for partial summary judgment on the breach of contract and the breach of the covenant of good faith and fair dealing claims. Plaintiffs also move pursuant to Federal Rule of Civil Procedure 56(f) for an opportunity to conduct discovery with regard to its claims for punitive damages on the first and fourth claims for relief.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Recognizing that summary judgment motions can contribute significantly to the resolution of litigation when there are no factual issues, the Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e) (emphasis added) and citing *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to these specific facts offered by the non-moving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) nevertheless requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## III. DISCUSSION

Defendant now moves for summary judgment on all five of plaintiffs' causes of action on the ground that the underlying Counterclaims by Maryland Hotel against plaintiffs for abuse of process does not and cannot constitute claims for malicious prosecution until Bay Vista's claims against Maryland Hotel are resolved in the latter's favor. Thus American contends that the Counterclaim is not covered by the Policy provisions concerning personal injury, and therefore no duty to defend under the terms of the Policy arose. Moreover, be-

cause the sole basis for defense or indemnity depends on whether the abuse of process claims fall under the Policy provisions for malicious prosecution, American contends that resolution of this single issue in defendant's favor disposes of the entire action presently before this Court.

### A. Breach of the insurance contract.

■ In California, "an insurance company must defend any lawsuit brought against its insured which *potentially* seeks damages within the coverage of the policy." *Mullen v. Glens Falls Ins. Co.*, 73 Cal.App.3d 163, 169, 140 Cal.Rptr. 605 (1977) (emphasis in original) (citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 265, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)); *see also Mullen*, 73 Cal.App.3d 163, 140 Cal.Rptr. 605 (holding insurer liable for judgment resulting from failure to defend even though there was only potential, not actual, coverage). Moreover, the duty to defend is broader than the duty to indemnify an insured. *Safeco Ins. Co. v. Andrews*, 915 F.2d 500, 501 (9th Cir.1990). Thus "courts have imposed a duty to defend whenever the insurer ascertains facts which give rise to the possibility or 'potential' of liability to indemnify." *Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guar. Co.*, 76 Cal.App.3d 272, 278, 142 Cal.Rptr. 681 (1977). This determination must be made at the outset of the case based on the "facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense." *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). However, while the duty to defend is broader than the duty to indemnify, the former is nonetheless predicated upon the insurer's liability for the damages which could be awarded in that action. *State Farm Fire & Cas. Co. v. Drasin*, 152 Cal.App.3d 864, 868–69, 199 Cal.Rptr. 749 (1984).

> The nature and kind of risk covered by the policy limits the duty to defend. The carrier has the duty to defend the insured against loss of the nature and kind against which it was insured. By negative implication, the insurer has no duty to defend the insured against loss of the nature and kind that is not within the coverage of the policy.

*Dyer v. Northbrook Property & Cas. Ins. Co.*, 210 Cal.App.3d 1540, 1547, 259 Cal. Rptr. 298 (1989).

In light of the foregoing, the Court looks to whether the facts and allegations of the Counterclaim, as well as any outside facts known to defendant at the time the defense was tendered, establish the possibility of a claim for malicious prosecution within the meaning of the Policy such that American was bound to undertake the defense of such claims.

### 1. Malicious prosecution versus abuse of process.

■ In a malicious prosecution action, a plaintiff must establish that a prior action brought against him by or at the direction of the defendant (1) was brought without probable cause; (2) legally terminated in his favor; and (3) was initiated with malice. *Bertero v. National Gen. Corp.*, 13 Cal.3d 43, 50, 118 Cal.Rptr. 184, 529 P.2d 608 (1974). In order to avoid inconsistent judgments between the court trying the prior action and the one considering a subsequent action for malicious prosecution, California law requires that the prior action have reached a termination, and that it have terminated in the present plaintiff's favor. *Id.* at 50, 118 Cal.Rptr. 184, 529 P.2d 608. "Because of this requirement, it is obvious that a defendant cannot cross-complain or counterclaim for malicious prosecution in the first or main action since a claim cannot state a cause of action at that stage of the proceedings." *Babb v. Superior Court*, 3 Cal.3d 841, 846, 92 Cal. Rptr. 179, 479 P.2d 379 (1971). The policy concerns behind this requirement include demonstrating the plaintiff's innocence and the unfounded nature of the prior action. *Jaffe v. Stone*, 18 Cal.2d 146, 114 P.2d 335 (1941). Thus even a dismissal in a prior suit will be deemed final for purposes of a malicious prosecution claim so long as it reflects on the merits of the underlying action, demonstrating the innocence of the present plaintiff. *Lackner v. La Croix*, 25

Cal.3d 747, 750, 159 Cal.Rptr. 693, 602 P.2d 393 (1979).

■ In contrast, to state a claim for abuse of process, a party must allege on the part of the defendant only "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Templeton Feed & Grain v. Ralston Purina Co.*, 69 Cal.2d 461, 466, 72 Cal.Rptr. 344, 446 P.2d 152 (1968) (quoting *Prosser on Torts* 687 (2d ed.)). Several California courts have recognized the intrinsic and critical differences between the torts of abuse of process and malicious prosecution. *See, e.g., Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1169–70, 232 Cal.Rptr. 567, 728 P.2d 1202 (1986); *Oprian v. Goldrich, Kest & Assocs.*, 220 Cal.App.3d 337, 343, 269 Cal.Rptr. 429 (1990); *Clark Equip. Co. v. Wheat*, 92 Cal.App.3d 503, 525, 154 Cal.Rptr. 874 (1979).

■ In the present case, neither the theory of liability, as represented in Maryland Hotel's characterization of the claim as one for abuse of process, nor the factual allegations establish the prior termination in the Hotel's favor to sustain a claim for malicious prosecution. While the allegations in the Counterclaim clearly allege an ulterior or improper purpose as is required under both torts, the Counterclaim nowhere asserts that Bay Vista's original claim of malicious prosecution had been finally resolved in Maryland Hotel's favor. Moreover, although clearly provided with ample opportunity throughout the filing of this action and the briefing of the present cross-motions, plaintiffs have yet to indicate whether Bay Vista's claims of malicious prosecution in the original Complaint have been resolved, much less whether such resolution has been in Maryland Hotel's favor. Similarly, the "Notice of Pending Action" serving as the basis for the third claim for abuse of process was apparently never filed with the County Recorder, and thus it is unclear whether there is any "action" to be resolved in Maryland Hotel's favor. Thus, even by fully applying *CNA Casualty* by examining both the Counterclaim in

title and allegations, as well as the facts as made known to defendant at the time the defense was tendered, *see* 176 Cal.App.3d at 605, 222 Cal.Rptr. 276, and indeed even as the facts are known at this time, Maryland Hotel's Tenth, Eleventh, and Twelfth causes of action do not and cannot state a claim for malicious prosecution as they lack the final determination of a prior proceeding.

This result is also supported by caselaw from other jurisdictions, finding that the torts are in fact distinct and that insurance policies providing coverage for malicious prosecution do not likewise encompass claims for abuse of process. *See, e.g., Parker Supply Co. v. Travelers Indemnity Co.*, 588 F.2d 180, 182–83 (5th Cir.1979) (applying Alabama law); *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wash.App. 290, 612 P.2d 456, 459 (1980) (applying Washington law); *San Filippo v. U.S. Trust Co.*, 1987 WL 11554, 1987 U.S.Dist. LEXIS 3960 (S.D.N.Y. May 18, 1987) (applying New York law).

In *Parker*, the Fifth Circuit affirmed a grant of summary judgment in favor of an insurer on a claim of breach of an insurance contract by failing to provide a defense and indemnify the insured pursuant to policy provisions for malicious prosecution (but not abuse of process). In the underlying action, the insured was alleged to have abused the judicial process by attempting to extort money "by issuing excessive attachments and garnishments" against the plaintiff there. *Parker*, 588 F.2d at 182. The jury was instructed on wrongful attachment, wrongful garnishment, and abuse of process, but not malicious prosecution. The jury subsequently concluded that the insured had "caused the court to sue out writs excessively" and "abused the process of the court unnecessarily." *Id.* The Fifth Circuit explained its upholding of summary judgment in favor of the insurer:

Since the differences between actions for malicious prosecution, abuse of process, and wrongful attachment or garnishment are recognized in Alabama, the policies' reference to the offense of 'malicious

1580

prosecution' was not ambiguous and only a suit against Parker for that offense would gave created an obligation for insurers to defend and indemnify.

*Id.* at 182–83. Thus the Fifth Circuit held that there was no ambiguity as to the meaning of "malicious prosecution" as used in the policy, and that claims for such were clearly distinct from those for abuse of process.[1]

Similarly, in *R.A. Hanson*, the policy at issue provided coverage for claims for "malicious prosecution," but not for "abuse of process." The insured was sued for abuse of process, and the insurer denied coverage. The trial court granted summary judgment in favor of the insured, and the appellate court affirmed:

> Under the terms of the policy, *Aetna had no duty to defend an abuse of process claim* and from the face of the pleadings the elements of malicious prosecution were not alleged.... There is a clear distinction in Washington law between abuse of process and malicious prosecution. *Hanson could have insured against abuse of process, but it did not. Presumably, the words of the*

*policy have some meaning, purpose and limit. Insurance against malicious prosecution does not cover abuse of process.*

*R.A. Hanson*, 612 P.2d at 459 (emphasis added).[2]

Plaintiffs rely almost exclusively on the California Court of Appeals decision in *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 222 Cal. Rptr. 276 (1986), to support their position that the allegations in the Counterclaim create a sufficient possibility of coverage under the Policy to create a duty to defend by American.[3] *CNA Casualty* involved an underlying claim of antitrust violations of the Clayton and Sherman Acts, claims which were not provided for in any of the applicable insurance policies. The Court of Appeals, however, ultimately held that liability did attach because based on the factual allegations of the underlying complaint—rather than the drafter's sole characterization of the claims as antitrust violations—policy provisions were implicated. Moreover, the court strongly disapproved of the insurers' failure to investigate the

1. Plaintiffs try to distinguish *Parker* on the grounds that under Alabama law, only a theory of liability as alleged in the complaint falls within policy coverage, i.e., the cause of action must be characterized as "malicious prosecution." Even accepting this construction, this Court has analyzed Maryland Hotel's Counterclaim as it is named and as it is supported in the accompanying allegations and the factual circumstances of the prior action, and still the three abuse of process claims do not constitute claims for malicious prosecution under California law. Therefore plaintiffs' efforts to distinguish the *Parker* decision are unpersuasive.

2. Plaintiffs attempt to distinguish *R.A. Hanson* on the same grounds as *Parker*, noting that a subsequent decision of the Washington Supreme Court held as follows:

> *R.A. Hanson Co. v. Aetna Ins. Co.*, ... cited by [appellant] but contrary to his position, is in accord with the principle that an insurer is obliged to defend only allegations on the face of the pleading which give rise to a covered event. Thus, the duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations rendering the insurer liability to the insured under the policy. *State Farm General Ins. Co. v. Emerson*, 102 Wash.2d 477, 687 P.2d 1139, 1145 (1984). How-

ever, Washington's decision to limit analysis of potential claims to the face of the pleadings does not in any way lessen the finding that a claim for abuse of process does not fall within policy coverage for claims for malicious prosecution. Again, this Court has examined both the present and possible factual allegations which Maryland Hotel has made and can make at this time, and still such allegations fall short of a claim for malicious prosecution.

3. Plaintiffs also rely on the "indirect" underlying decision of the trial court in *Select Insurance Co. v. Superior Court*, 226 Cal.App.3d 631, 276 Cal.Rptr. 598 (1990). There apparently the trial court held that an insurer with "malicious prosecution" coverage was obligated to defend a counterclaim alleging antitrust and abuse of process. The Court of Appeals reversed, but only on the issue of the insurer's "late notice" defense. As defendant notes, the unpublished trial court decision is of no precedential value to this Court, *see* California Rules of Court 977(a), and the indirect "affirmance" of that decision by the appellate court is hardly persuasive. Indeed, like the many courts when faced with significant, substantive issues of law, it is often more meet to focus on the procedural issues in order to resolve the respective action.

allegations of the lawsuit after being tendered the defense. *Id.* at 610, 222 Cal. Rptr. 276.

With regard to the foregoing, the Court is in full agreement with plaintiffs regarding the scope and relevance of the *CNA Casualty* decision to the present case. Here the record establishes that American did request full information regarding the action and the underlying Counterclaim, and that its rejection of the tendered defense was made only after having fully consulted coverage counsel regarding whether the abuse of process claims fell within the Policy. Therefore the Court is satisfied that American considered both the allegations of the Counterclaim and the possible allegations which could be made in light of the factual circumstances known to American. The Court, however, differs with plaintiffs' estimation of the significance of their remaining arguments based on *CNA Casualty.*

Included in the allegations which the *CNA Casualty* court found to be critical were allegations that the insured had "[a]greed to file and caused the filing of false, frivolous and sham counterclaims in this action for the purpose of punishing plaintiffs and further securing and maintaining the monopoly position now enjoyed by defendants...." *Id.* at 608 n. 3, 222 Cal.Rptr. 276. Plaintiffs note the similarities between these claims and the allegations in the Counterclaim underlying the present action. Finally, in the footnote following, the court apparently rejects one insurer's contentions that the allegations concerning the "false, frivolous and sham counterclaims" could not constitute a claim for malicious prosecution as it lacked the prior termination in favor of the party alleging the malicious prosecution claim:

[W]hen presented with a tender of a defense, it is not the insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim that is not meritorious. To the contrary, [the insurer's] own policy provides that it shall have the 'duty to defend *any* suit against the Insured seeking damages on account of such ... injury [including injury arising out of a malicious prosecution] *even if any of the allegations of the suit are groundless,* false or fraudulent....' The fact that [the insurer] may have known of a good defense, even an ironclad one, to the malicious prosecution claims did not relieve it of its obligation to defend its insured.

*Id.* at 609 n. 4, 222 Cal.Rptr. 276 (emphases in original).

This Court finds that the circumstances of the present case sufficiently distinguish it from CNA Casualty that the above conclusory and unsupported *dicta* is not dispositive of defendant's claims, particularly where the effect is to disregard an essential element of a cause of action. In short, defendant American conducted as full an investigation of the Counterclaim as it could based on the information given it by the insureds, and that investigation clearly established that as of this point in time, not only does Maryland Hotel not assert a claim for malicious prosecution, but it simply cannot under California law. Moreover, the single sentence in the underlying claim in *CNA Casualty* stands in stark contrast to the seventeen paragraphs establishing the abuse of process claims in the Counterclaim. Thus the allegations themselves clearly establish the basis for the Counterclaims, and the allegations themselves just as clearly establish that they are for abuse of process and not malicious prosecution.[4]

---

4. The Court also does not find the case of *Loomis v. Murphy,* 217 Cal.App.3d 589, 266 Cal.Rptr. 82 (1990), to be contrary. There defendant filed a cross-complaint for abuse of process. After the complaint was dismissed, the cross-complaint was amended to state a claim for malicious prosecution. The Court of Appeals reversed the trial court's judgment on the pleadings holding that a cross-claim for malicious prosecution cannot be brought in the same proceeding, thus permitting the malicious prosecution action to proceed.

In the present case, were there to be a resolution of Bay Vista's malicious prosecution claim in Maryland Hotel's favor, then presumably American's duty to defend would arise at that time. In short, while a future additional fact would support a claim for malicious prosecution, defense of such claim does not arise before that fact exists. Until that point, then, the Coun-

*2. Reasonable expectations of the insured.*

■ In considering the coverage afforded by a policy, " 'the court may not look to the words of the policy alone, but must also consider the reasonable expectations of the public *and the insured* as to the type of service which the insurance entity holds itself out as ready to offer.' " *White v. Western Title Ins. Co.,* 40 Cal.3d 870, 881, 221 Cal.Rptr. 509, 710 P.2d 309 (1985) (emphasis added) (quoting *Jarchow v. Transamerica Title Ins. Co.,* 48 Cal.App.3d 917, 941, 122 Cal.Rptr. 470 (1975)). In other words, the policy "must be construed so as to give the insured the protection which he reasonably had a right to expect." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 270 n. 7, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (original emphasis deleted). Therefore, "if coverage may be reasonably expected but is not to be provided, notice of noncoverage must be conspicuous, plain, and clear." *McLaughlin v. Connecticut General Life Ins. Co.,* 565 F.Supp. 434, 441 (N.D.Cal.1983). However, while "doubts, uncertainties and ambiguities" in the contract language should ordinarily be resolved in favor of the insured to effect his reasonable expectations of coverage, "this rule of construction is applicable only when the policy language itself is found to be unclear." *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986) (citations omitted).

Plaintiffs argue that the plain meaning of the term "malicious prosecution" to the average layman would encompass the legalistic definition of both the torts of malicious prosecution and abuse of process: a legal proceeding undertaken for an improper purpose. Therefore they contend that they have a reasonable expectation of coverage under the Policy in light of Maryland Hotel's allegations that Bay Vista's original Complaint was filed "for an improper

purpose, namely, to intimidate" the Hotel "in not pursuing any action," "to exact concessions," "to gain an additional advantage" over the Hotel, and "to disrupt the business enterprise" of the Hotel. Counterclaim ¶¶ 69–70, 76 & 81.

The Policy, however, clearly states that it covers claims for "malicious prosecution" only, and not abuse of process. Therefore there is no apparent ambiguity under the terms of the contract. Moreover, the Policy specifically states that "[n]o other obligation or liability to pay sums or perform acts or services is covered unless *explicitly* provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B." Policy § I.B.1.a (emphasis added). Therefore, in light of the itemization of some five different specific areas constituting "personal injury," *see id.* § V.10, clearly the parties could have readily added a provision for the "family" of malicious prosecution torts rather than the specific claim of malicious prosecution, but they did not do so.[5] *See San Filippo v. U.S. Trust Co.,* 1987 WL 11554, 1987 U.S. Dist. LEXIS 3960 (S.D.N.Y. May 18, 1987) ("This Court finds nothing ambiguous about the phrase 'malicious prosecution.' That phrase clearly refers to the traditional action at common law. If the parties intended in some way to broaden this *common sense interpretation of this common law phrase,* they clearly could have so provided." (emphasis added)).

Moreover, as noted above, several courts from other jurisdictions enforce the language of the contracts in this area, holding that the language is not ambiguous, and that claims for malicious prosecution are covered, but not those for abuse of process. *See, e.g., Parker Supply Co. v. Travelers Indemnity Co.,* 588 F.2d 180, 182–83 (5th Cir.1979); *R.A. Hanson Co. v. Aetna Ins. Co.,* 26 Wash.App. 290, 612 P.2d 456, 459

terclaims remain claims for abuse of process and not malicious prosecution.

**5.** Indeed, in light of the requirement that there be a showing of no probable cause for bringing the underlying claim, as well as the requirement of the underlying claim's resolution against the insured, one could argue that a claim of mali-

cious prosecution requires a greater showing of fault or tortious conduct on behalf of the insured—and therefore in greater need of liability insurance—than does the more "reflexive" claim for abuse of process, which at least implies that the original perpetrator gave up on such "abuse" rather than seeing it through to finality.

(1980). These conclusions are persuasive in light of the presumption that the parties, including the insurer, should be entitled to enforce the language of the policy for which they bargained.[6]

In conclusion, the Court finds that the language of the Policy is clear, and that only claims for malicious prosecution were intended to be covered, rather than claims for abuse of process as well. Therefore, as a matter of law, the Court holds that no duty to defend under the American insurance contract with Bay Vista arose in relation to the Counterclaims for abuse of process. Thus American is entitled to summary judgment on plaintiffs' second and third causes of action.

*B. Breach of the covenant of good faith and fair dealing.*

 "The term 'bad faith' does *not* connote 'positive misconduct of a malicious or immoral nature' (factors more properly considered in connection with punitive damages). It simply means the insurance company acted *tortiously.*" Kornblum, Kaufman & Levine, *California Practice Guide: Bad Faith* ¶ 3:7, at 3–3 (1990) (citing *Neal v. Farmers Ins. Exch.,* 21 Cal.3d 910, 921 n. 5, 148 Cal.Rptr. 389, 582 P.2d 980 (1978)). Moreover, "where there is no duty to defend, there can be no bad faith refusal defend." *State Farm Fire & Cas. Co. v. Geary,* 699 F.Supp. 756, 760 (N.D.Cal. 1987). In light of the foregoing conclusion that American was not under an obligation to defend, the Court finds that defendant is entitled to summary judgment on plaintiffs' claim of breach of the covenant of good faith and fair dealing, including the prayer for punitive damages.

*C. Breach of fiduciary duty against an insurer.*

 American seeks dismissal of the fourth cause of action for breach of fiduciary duty. Defendant correctly notes that California does not recognize a private cause of action against an insurer for breach of fiduciary duty. *Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1147–50, 271 Cal.Rptr. 246 (1990); *Henry v. Associated Indem. Corp.,* 217 Cal.App.3d 1405, 1418–19, 266 Cal.Rptr. 578 (1990). Plaintiffs do not address this argument, much less oppose it. Therefore the Court finds that defendant is entitled to summary judgment on the fourth cause of action for breach of fiduciary duty, as well as the accompanying claim for punitive damages.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant American's motion for summary judgment is GRANTED.

2. Plaintiffs' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

---

**6.** Plaintiffs also rely on the analysis in *Gray* that the claim of assault was of the same "nature and kind" as the policy provisions for negligence on the part of the insured. *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). Thus the court held that the complaint's failure to alternatively plead a cause of action for negligence did not vitiate the insurer's duty to defend such claim. However, this Court finds application of the "nature and kind" argument much more tenable where the covered claim is a lesser cause of action than the greater one plead, i.e., "negligence" would seem a lesser included tort of a cause of action for "assault." In the present case, because of its additional requirements of lack of probable cause and final termination, it is less persuasive to assume the "greater" tort of malicious prosecution is also encompassed within a basic claim for abuse of process.