Martin MASON, Plaintiff—Appellant,

v.

EQUITABLE; Equitable Life Assurance Society of the United States; Business Men's Assurance Company of America, Defendants—Appellees.

Martin Mason, Plaintiff–Appellant,

v.

Equitable; Equitable Life Assurance Society of the United States; Business Men's Assurance Company of America, Defendants–Appellees.

Nos. 00–56588, 01—55107.
D.C. No. CV–99–08883–NM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Decided Feb. 27, 2002.

Before LEAVY, T.G. NELSON and W. FLETCHER, Circuit Judges.

MEMORANDUM*

Martin Mason ("Mason") appeals the summary judgment granted to Business Men's Assurance Company of America ("BMA") (appeal No. 00–56599) and the summary judgment granted to Equitable Assurance Society of the U.S. ("Equitable") (appeal No. 01–55107). We reverse the summary judgment granted to BMA and affirm the summary judgment granted to Equitable.

A. *No. 00–56588—BMA*

1. *Facts*

Mason had a two-year employment contract, dated January 10, 1997, with his employer, MMI Products Inc. ("MMI"), and received disability insurance coverage through BMA. Mason's employment contract provided that either employee or employer could terminate the employment upon 30 days' written notice to the other. MMI sent Mason a letter dated May 28, 1998, stating that "this letter will serve as the required 30 day notice of your termination of employment." The letter stated that, under the terms of the employment contract, since Mason was being terminat-

ed without cause, MMI was obligated to continue Mason's salary for the balance of the calendar year 1998. The letter also stated that Mason's health and disability insurance would remain in effect until June 30, 1998.

The record in this case contains two summary of plan benefits, one dated November 1, 1994, and one dated March 1, 1998. We will assume that Mason received both versions of the plan summaries, although the record is not clear on this point. The 1994 plan summary includes the following language: "You will cease to be insured . . . the date employment terminates. Cessation of active employment will be deemed termination of employment, except . . . Insurance may be continued if you are temporarily laid off or given leave of absence: but not beyond the month after the layoff or leave of absence begins." The 1998 plan summary includes the following language: "An insured's coverage will terminate . . . the date employment ceases, if coverage depends on employment. For purposes of this Policy, employment ceases on the date the person is no longer Actively at Work. An Insured's coverage may continue under these conditions: . . . (2) during an authorized leave of absence granted by the Policyholder for reasons other than Sickness or Injury but not beyond the end of the Policy Month in which the authorized leave of absence starts." The "Policy Month" in the 1998 summary is defined as "the period that starts on a Premium Due Date and ends on the day prior to the next Premium Due Date."

Mason was diagnosed with bladder cancer in 1994, was treated with surgery and returned to work. The cancer returned in 1996, and he was again treated with sur-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

gery and returned to work. On June 5, 1998, the cancer was found to have returned again, and on June 18, 1998, Mason underwent surgery. Mason applied to BMA for long term disability benefits in August 1998.

MMI filled out an "employer's report of claim form" dated October 5, 1998, which indicated that the date Mason was actually last present at work was May 27, 1998, and the reason for stopping work was that he was "granted a LOA" [leave of absence]. In a letter dated January 22, 1999, BMA asked several questions of MMI regarding Mason's claim, including the following request: "Please explain why Mr. Mason was granted a leave of absence, and what date that leave of absence began." By letter dated February 9, 1999, MMI stated to BMA that Mason's last day worked was May 27, 1998, and Mason was not granted a leave of absence. In a letter dated January 28, 1999, Mason stated to BMA that he had never requested a leave of absence, and that he was given 30 days' notice under his employment contract on May 27, 1998, making June 30, 1998, his last day as an employee. Mason concluded: "However, since they were going to be in the due diligence process, at the facility, with the new buyer MMI felt my present [sic] may have a negative influence and they requested I stay away from the facility, which I did."

In a letter dated March 15, 1999, BMA denied disability benefits, stating that Mason was no longer "actively at work" beyond May 27, 1998, at 11:59 p.m. The letter further stated that Mason's absence from work after May 27, 1998 was not a temporary layoff or authorized leave of absence. The letter concluded that the disability began in June 1998, and "coverage was not inforce [sic] at the time you maintain disability began ..."

Following the denial of benefits, Mason filed this action, which was removed to federal court based upon ERISA jurisdiction. The district court granted BMA's motion for summary judgment. The district court concluded that BMA did not abuse its discretion in concluding that Mason was no longer actively at work after May 27, 1998, and the policy was not in effect when Mason's condition arose in June 1998. Mason timely appealed.

2. *Analysis*

■ In an action to recover benefits under ERISA, the decision of a plan administrator is reviewed de novo unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir.1999) (en banc). The parties agree that the insurance policy granted BMA discretionary authority, and the district court properly reviewed the determination of the plan administrator for an abuse of discretion. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir.2000). The district court granted summary judgment after concluding that BMA did not abuse its discretion in determining that coverage had terminated on May 27, 1998. We disagree.

An administrator may abuse its discretion when it construes provisions of the plan in a way that conflicts with the plain language of the plan or relies on clearly erroneous findings of fact in making a benefit determination. *See Taft v. Equitable Assurance Soc'y*, 9 F.3d 1469, 1472–73 (9th Cir.1993). The plan at issue provides that coverage continues during an authorized leave of absence, but not beyond the month after the leave of absence begins or beyond the end of the policy month, which is the time period between monthly premium due dates. The policy does not define

"authorized leave of absence," but we can construe its ordinary meaning as absence from work with authorized permission from the employer.

The evidence indicates that MMI gave Mason a contractually obligated written 30 day notice of termination of employment, and, rather than expecting Mason to continue to work until his last day of employment on June 30, 1998, MMI requested Mason to stay away from the premises to facilitate the sale of the business. MMI stated on the insurance claim form that Mason was on a leave of absence.

BMA argues that MMI erroneously filled out the claim form and that Mason concedes that he never requested a leave of absence. However, the fact that Mason did not request a leave of absence is not determinative. After MMI gave Mason a written 30 day notice of termination, MMI, for its own convenience, orally directed Mason not to come to the job premises during the last 30 days of his contract for employment in order to facilitate the possible sale of the business. Mason, being obedient to the directions of his employer, complied with this request. Mason had the permission of his employer to be absent from work for the last 30 days of his employment. The plan does not define "leave of absence," and we conclude that the plan administrator abused its discretion in denying coverage under the leave of absence provisions in the policy. We therefore reverse the summary judgment granted to BMA.

B. *No. 01–55107—Equitable*

█ Mason's disability policy with Equitable provided benefits in the event he became totally disabled, which was defined as "inability due to injury or sickness to engage in the substantial and material duties of your regular occupation."

Following surgery for the recurrence of bladder cancer in June 1998, Mason's treating oncologist instructed Mason to avoid any further exposure to industrial solvents or chemicals because such solvents posed an extreme risk for further recurrence of bladder cancer. Equitable denied Mason's claim for total disability benefits.

Mason contends that the district court abused its discretion in rejecting Mason's proffered medical evidence. We find no abuse of discretion. We agree with the district court's conclusion that even assuming some exposure to some chemicals may be necessary to perform his occupation, Mason provided no competent admissible medical evidence that the type of chemicals he would be exposed to pose any greater risk of causing cancer or its recurrence in him than such exposure would in the population at large. The district court acted within its discretion in rejecting the report from Dr. Brautbar and the medical opinion of Dr. Neustein on the basis of their lack of reliability and relevancy pursuant to the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Domingo v. T.K.,* 276 F.3d 1083, 1088 (9th Cir.2002). We affirm the summary judgment granted to Equitable.

AFFIRMED in part, REVERSED in part, and REMANDED. No costs allowed.