**Cheryl BRIGHT, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. CIV. 03–00472 SPKLEK.**

United States District Court, D. Hawaiʻi.

July 21, 2004.

---

Carl M. Varady, Pacific Tower, Honolulu, HI, for Plaintiff.

Philip A. Li, Matt A. Tsukazaki, Torkildson Katz Fonseca Jaffe, Moore & Hetherington, Honolulu, HI, for Defendant.

*ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

SAMUEL P. KING, District Judge.

### OVERVIEW

Both sides move for summary judgment in this long-term disability insurance benefits case—an Employee Retirement Income Security Act of 1974 ("ERISA") action for benefits under 29 U.S.C. § 1132(a). The Court held oral argument on July 9, 2004. Carl Varady appeared for Plaintiff Cheryl Bright ("Plaintiff" or "Bright"); Matt Tsukazaki appeared for Defendant Life Insurance Company of North America

("Defendant" or "LINA"). As stated at oral argument, the parties agree that the record is sufficient for the Court to rule at this stage of the proceedings. If material facts are not in dispute and the Court concludes (which it does) that it does not need further evidence to resolve the dispute, then the matter is suitable for decision without a non-jury trial. *See, e.g., Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir.1999) (en banc).

Because the parties are familiar with the facts of the case, and because the record is extensive, the Court recounts only the facts as necessary to render this decision. After review of the entire record and consideration of all written and oral arguments, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's corresponding motion. Plaintiff is entitled to the long-term disability benefits that were terminated in 2002.

## DISCUSSION

Bright has rheumatoid arthritis. This is undisputed. She was so diagnosed in 1998 (she is now 57 years old). After a flare-up, she applied for and received short-term disability benefits from LINA. The benefits were paid from August 11, 1998, through September 30, 1998. She returned to work. Eventually, on June 9, 2000, she stopped working altogether. Short-term benefits were again paid from June 12, 2000, to December 11, 2000. Long-term benefits were then paid from December 12, 2000, until June 11, 2002, when LINA terminated the benefits, contending she was not disabled within the meaning of its disability policy.[1] After an internal appeal was denied, this civil action followed.

There is a threshold issue regarding which standard of review (*de novo* or abuse of discretion) this Court is to apply in reviewing the denial of benefits. The question on the merits is whether Bright is totally disabled. This answer depends in large part upon what the requirements were of Bright's former job at Intracorp, a medical services company (ironically, a subsidiary of CIGNA Corporation, which is also LINA's parent). LINA contends that Bright's duties were as a "Nurse Consultant" (as defined by the Department of Labor's Dictionary of Occupational Titles) which is described essentially as a totally sedentary job. Bright, however, points out that her job title was a "Field Specialist," or a "Registered Nurse case manager," and in any event encompassed many duties that were not sedentary. Her duties, in addition to writing and telephoning, required, among other things, meeting with doctors, patients, employers, and therapists both in hospitals and "in the field." It also required driving and traveling inter-island. She points to the evidence in the record that her duties were not totally sedentary. And, regardless, Bright contends that she is unable to work at even a sedentary job.

The record of this case contains many medical records and insurance documents. The big picture, however, is fairly simple: What, if anything, changed to cause the insurance company to stop her benefits? Was she, and is she, totally disabled? All her treating and consulting physicians say she's totally disabled. LINA relies primarily on the records and an opinion of Dr. David Allen, a reviewing doctor in Philadelphia, Pennsylvania, who reviewed the medical records (not necessarily the treating and consulting physician's conclusions regarding whether she is disabled).

---

1. The parties do not dispute that Bright is in fact permanently disabled (and receives benefits) for purposes of social security. The parties also agree that the standards are different for purposes of social security and for ERISA.

Dr. Allen opined that Bright can do some work and is not disabled.

LINA does not dispute that the "regular occupation" or "own occupation" standard is at issue. We are not necessarily concerned here with whether Bright can do anything; the question is whether she is and was totally disabled from performing the regular duties of her job when she was diagnosed with rheumatoid arthritis and stopped working.[2]

## I. Threshold legal issue.

■ What standard of review under ERISA applies to LINA's decision terminating Bright's long-term disability benefits? The plan (policy) says "Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid." [R. 15]. It also says "Disability Benefits will end on the earliest of the following dates.... the date the Insurance Company determines an Employee is not Disabled." [R. 15].

■ The default standard of review is *de novo. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). It is *de novo* unless the plan "unambiguously" provides that a plan administrator has "discretionary authority" to grant or deny benefits. *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir.1999) (en banc). Cases which are binding on this Court that apply language similar to here (requiring "satisfactory proof of Disability") have found it ambiguous and apply a *de novo* standard. *Kearney,* 175 F.3d at 1090; *Sandy v. Reli-*ance Standard Life Ins. Co., 222 F.3d 1202, 1203–04 (9th Cir.2000).

Although the policy does not "unambiguously" confer discretion, the "Summary Plan Description" accompanying the policy and presumably given to the Plaintiff contains the following language: "IntegratedCare [a subsidiary of LINA] has sole discretion to determine whether your [long-term disability] benefits are approved under the plan. IntegratedCare's determinations and interpretations are final and binding on all parties." [R. 4].

Defendant relies on this Summary Plan Description language and argues that it unambiguously confers discretion on the plan administrator, requiring an abuse of discretion standard of review.

The Court rejects LINA's argument because, even if the Summary Plan Description's language itself unambiguously says the administrator has sole discretion, the Summary Plan Description is supposed to be a "summary" of the plan. *See, e.g., Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 711 (7th Cir. 1999) (Posner, J.) ("When... the plan and the summary plan description conflict, the former governs, being more complete—the original, as it were..."). The SPD cannot change the plan. Or if it could, such an amendment should have been done in accordance with the plan and not with no notice to the participants. *See Grosz–Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1158–59 (9th Cir.2001) (reasoning that an insurer may not unilaterally amend a plan summary with an insured in

---

**2.** The policy provides in relevant part:
  Definition of Disability
  An Employee is Totally Disabled if, because of Injury or Sickness,
  1. he or she is unable to perform all the essential duties of his or her occupation; and
  2. after Monthly Benefits have been payable for 60 months, he or she is unable to perform all the essential duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.
  [R. 11]. (The record citations to "R.___" refer to the last three bates numbers in Plaintiff's Appendix, which is her insurance file. For example, bates number "11013300011" is R. 11.)

a manner that does not comport with the underlying contract). Here, the SPD was a version dated September 1999, [R. 1], *after* the policy itself which was effective January 1, 1998 [R. 7]. Even if the SPD purported to be an amendment to the plan, there is no evidence that it was intended to change the plan. (Indeed, the 1999 SPD date post-dated her 1998 diagnosis with rheumatoid arthritis.) At most, the SPD language creates an ambiguity, and so the default *de novo* standard of review applies.[3] *Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

Both parties point to language in *Bergt v. Retirement Plan For Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139 (9th Cir. 2002) (indicating that a favorable—to the insured—plan document controls if it conflicts with a contrary ambiguous provision in the SPD). *Bergt* only favors LINA if the language between the plan and the SPD does not "conflict" and the Court finds that the language regarding the discretion given to LINA between the two directly conflicts. Again, the different provisions regarding determination of disability in the policy and the SPD create— at best for LINA—an ambiguity in which standard of review applies. Therefore, under *Firestone*, the standard of review is de novo.

## II. Merits

▉ The record reveals the following pertinent facts: Bright ceased working in June of 2000 due to pain in her fingers, wrists, ankles, knees, and hips caused by her rheumatoid arthritis. Her records also have some indication of a cervical degenerative disc disease with stenosis. [Plaintiff's Concise Statement of Facts, ¶¶ 1,3 and exhibits attached thereto.] She also suffers from side effects of narcotic pain medication given because of her arthritis. Summarizing the medical evidence, five of Bright's treating and consulting doctors indicate she is "totally disabled:"

1) *Doctors Deborah Mathias and Lawrence Levin* (treating rheumatologist) were Bright's prior treating physicians. Both determined that she was disabled and that her conditions were worsening, especially because she would experience periodic flareups [e.g., R. 238].

2) *Doctor Travis Calvin* (consulting neurologist) concurred. "She is totally and permanently disabled... because of the amount of medication that is required to control her symptoms, as well as the symptoms themselves. She is unable to perform any remunerative occupation." [R. 224].

3) *Doctor Gary Iannitello* (consulting rheumatologist) concurred. "She is definitely disabled from a nursing career... I feel that any gainful employment is unlikely... I would consider her totally and permanently disabled." [R. 219].

4) *Doctor Mark Iannini* (treating rheumatologist who took over for Dr. Levin) also confirmed her disability. "Patient has severe rheumatoid arthritis, which is a chronic disabling condition and is lifelong." [R. 201].

On the other hand, LINA determined that Bright could do some work and terminated her benefits. The determination was made by a claims examiner or group of examiners. LINA did not obtain an independent medical examination (as Dr. Levin had suggested LINA do if it did not accept his conclusion.) [R. 139, 146]. LINA appears to have focused on whether Bright was restricted from sitting: "... without the sitting restriction, [Bright] can

---

**3.** The Court would reach the same resirltin favor of Plaintiff even under an abuse of discretion standard of review.

perform her own occupation." [R 146]. On internal appeal, *after* termination of benefits by the claims examining people, LINA obtained an opinion from a reviewing rheumatologist, Dr. David Allen. As mentioned earlier, Dr. Allen is located in Philadelphia. He reviewed Bright's records and concluded that "based on the information that is available to me, Ms. Bright is not completely precluded from working at sedentary duties since June 12, 2002 on a continuous basis[.]" [R. 188].[4]

LINA makes much of intermittent references in some of the consulting doctor's reports that Bright cannot work as a "nurse." Although she *is* a nurse by degree and past experience, [R. 329], the job at issue is a "field specialist II" [R 558], or "nurse case manager [R. 329]." That is, perhaps she does not administer medicines or treat patients as a main (if at all) part of her duties. She described as major duties other medical-related duties such as case management ("appointments, reports, meetings") related to Intracorp's medical/rehabilitation functions. Nevertheless, those same doctor's reports refer to job specific symptoms. [E.g., R. 223[5] and R. 238.[6]] The Court is not convinced that the

doctors' references to "nurse" mean she was measured against a different standard than applicable here. Dr. Iannittelo, for example, referred to her disability from a "nursing career" [R. 216] and Dr. Levin, at one point, referred to her condition as preventing her from working at her "prior work status as a nurse" [R. 238]. As Bright points out, these statements are true and are not inconsistent with her being disabled from working in her listed duties as a "field specialist" or "RN case manager" or even as a "nurse consultant." They do not indicate that each and every doctor to have examined Bright measured her ability to work against, for example, the completely non-sedentary duties of an emergency room surgical registered nurse. There's nothing that indicates she misrepresented her job duties.

LINA emphasizes that Dr. Levin at one point did indicate that Bright could "occasionally" perform certain tasks "for up to 2.5 hours of time." This, however, does not mean Bright is not disabled. In any event, even if she could occasionally work for a day or so at her job with 25% non-sedentary duties, this does not mean she is not "disabled" and cannot perform her job

---

4. He also noted that "Dr. Iannini told me that he would be re-evaluating Ms. Bright in December of 2002 at his next visit. It would be appropriate to get a report from him from his next visit at that time and request an advanced detailed joint, cervical spine and upper and lower extremity musculoskeletal and neurological data from Dr. Iannini during that visit. This would be significant in determining whether or not Ms. Bright has had a progressive flare of her rheumatoid arthritis." [R. 189].

5. Report of Dr. Calvin: "patient has episodic 'flare-ups' ... no matter what medication management she is on at any given time .... Patient has been unable to work for two years because of her difficulty in moving around, driving, working at the computer, etc. Her neck symptoms are aggravated by driving and sitting, as would be expected ... patient com-

plains of chronic bilateral neck pain, aggravated by sitting, standing, bending or stooping, progressively worse during the course of the day.... She has repetitive left lateral shoulder and left arm pain, soreness in wrist, all aggravated by activity. Symptoms are particularly worsened by flexion, extension and lateral rotation of the neck."

6. Report of Dr. Levin: "because of her recent flareup of symptoms, I would have to re-rate her ability to do prolonged sitting or any lifting or pushing. I think she is not able to do any pushing or pulling whatsoever with any weight, and might be able to lift up to two pounds at a time but not more than that. She can not be sitting for more than an hour at a time because she gets increasing joint stiffness. Moreover, if she has to sit at a desk and look downwards, this seems to aggravate her neck pain."

on the same basis as before she was arthritic. She does not have to be an invalid to be "disabled" for present purposes.

██ LINA relies heavily on a recent Supreme Court ERISA case holding that Courts need not automatically accord special weight to treating physician's evaluations. *See Black & Decker v. Nord,* 538 U.S. 822, 830, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Under *Nord,* there is no heightened burden of explanation if administrators reject treating physician's opinions. *Id.* at 830–31. *Nord,* however, certainly does not mean that treating physician's evaluations can be ignored. In the particular case at hand, if the Court were to accept Dr. Allen's qualified review of records over the reports and opinions of the five treating and consulting physicians who have examined—sometimes repeatedly—Bright, the Court would have to ignore those physicians. Bright was examined by rheumatologists, neurologists, orthopedic surgeons, and her general practitioner. All agree she is disabled. She has had multiple neurological examinations, joint examinations, laboratory tests, x-rays, and a cervical MRI. [E.g., R. 226–28, 308–09]. Even given *Nord,* the weight of the evidence still clearly favors Bright.

Notes in the record from Bright's work history also support her claim. Prior to stopping working, in April of 2000, Bright's manager indicated that Bright came to the office to try "to help them out as they are short handed." [R. 568]. She "wanted to give them time to find a replacement." "[Bright] is having diff and it's amazing she has lasted as long as she has had to take on [additional] load... [Bright] cannot be accomm sed desk job and they don't have telephonic work." [R. 568]. Not only do her doctors support her version, but apparently so too does Bright's former manager.

The Court has found nothing in the records indicating Bright is malingering. LINA does not dispute that her disease is real. Her symptoms are real. Her pain is real. This is well-documented. By nature, arthritic symptoms might change from day to day. She might have good days and bad days. Probably more bad days than good days. But the question is whether the record supports (whatever the standard of review) LINA's conclusion in June of 2002—made without an IME—that she can perform the duties of her own occupation. The Court finds that it does not. Bright is disabled. Bright's documented flare-ups are clearly disabling. At other times, she might even be able to do occasional sedentary (or even non-sedentary) work for a few hours or even longer. . But even if that were so, it does not mean she can hold employment (work a regular job) in her own occupation, where others must depend on her.

Accordingly, the Court GRANTS Bright's Motion for Summary Judgment and DENIES LINA's Motion for Summary Judgment. Bright is entitled to (1) disability benefits of $1571 per month (offset by her social security disability benefits) retroactive to June 12, 2002, (2) future disability benefits so long as she continues to meet the terms and conditions for continued receipt of such benefits, (3) prejudgment interest on all benefits due and owing, and (4) attorneys fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

### CONCLUSION

For the foregoing reasons, judgment shall issue in favor of Plaintiff Cheryl Bright and against Defendant Life Insurance Company of North America.

Plaintiff may seek appropriate prejudgment interest, attorneys fees, and costs

under 29 U.S.C. § 1132(g)(1), Fed.R.Civ.P. 54(d), and Local Rules 54.2 and 54.3.

IT IS SO ORDERED.