KLEINFELD, Circuit Judge,
with whom RAWLINSON, Circuit Judge, joins, concurring in the judgment.
I concur in the judgment, but not the reasoning.
In my view, the plan does not confer discretion. The district court should have reviewed whether the premium waiver for *975 disability applied to Dr. Abatie de novo. That is the default standard of review under ERISA.[1]
The ERISA plan at issue in this case does not say that the trustee has “discretion” to construe its terms and determine whether a person is entitled to plan benefits. The majority concedes that the plan does not confer discretion in so many words, but says that no “magic words” are necessary. Our en banc decision in Kearney v. Standard Ins. Co.[2] held that we require the administrator be “unambiguous” in retaining discretion. Ingram v. Martin Marietta[3] applies Kearney, explaining that we “examine the text of [the] plan to determine whether it “unambiguously” states that [the administrator] has ‘discretionary authority’ in making benefits decisions.” [4] The majority claims to reaffirm the holdings of Kearney and Ingram that the plan must “unambiguously confer discretion,[5] yet it finds discretion in the face of ambiguity.
This plan says that the “responsibility” for “full and final” benefits determinations rests “exclusively” upon the insurance company. Is the “responsibility” to make a decision the same thing as discretion? Maybe, maybe not. One reading of the plan language is that it says who makes benefits determinations, not how they are to be made.[6] If two readings are reasonable, then the language is ambiguous and the plan does not “unambiguously” confer discretion.[7]
The majority does not really say why we should construe a plan to confer discretion on the trustees where the plan does not plainly say so. Calling a plain language requirement “magic words” expresses a feeling, not an argument. The majority’s analogy to a college’s grading policy is inapposite. People normally expect that their college grades will be determined somewhat subjectively by their professors but they do not expect that their insurance company will subjectively determine whether to pay their bills when they get sick. So we are left with no reason not to require the plan to say “discretion” if that is what it means.
There are good reasons for requiring plain talk in this, as in so many things. “Discretion” is not just a means by which courts can easily get rid of complicated ERISA cases. What it means in practical affairs is that, if the administrator could reasonably decide either way, then it can decide against the claimant and there is no recourse. That means a lot of people who ought to get life insurance proceeds, disability benefits, or medical expense coverage will not get the coverage they should and, under a sounder reading of the evidence, would.
The power to deny claims that could reasonably be resolved either way is very significant, so we ought to require plans to say so explicitly when they reserve discretion. And saying so is easy. ERISA plans are not written like contracts be *976 tween two lay people trying to find the words for a vague arrangement, like a hair salon proprietor and a person to whom she leases a chair. Lawyers write these policies using form books, case law research, and extensive consultation. They can use the word “retain discretion” as easily as they can use the “magic words” traditionally used in deeds, if they mean them.
If the administrator does not say that it “retains discretion,” there is probably a good marketing reason why not. A business might not want to buy a plan that gives the administrator discretion to deny coverage whenever it is arguable. Its employees could be left high and dry, and those employees include the executives who determine which group policies to buy. It is easier to sell insurance on the promise that the insurance company will pay the doctor bills than if the promise is only that the insurance company will take a look at it and decide whether to exercise its discretion to pay the bill. Forcing the administrator to say that it “retains discretion” gives the purchasers of group plans and their employees fair notice of how much protection they have.
And an administrator might choose weasel words to evade regulation yet retain discretion for purposes of claims litigation. States regulate insurance policies, and the National Association of Insurance Commissioners has adopted a model act[8] saying that no health or disability insuranee policy “may contain a provision purporting to reserve discretion.”[9] Some states have adopted the scheme[10] and, while California has not, its Department of Insurance has issued an opinion to the same effect.[11] So the practical effect of today’s majority opinion is that a group insurer may avoid regulatory problems by using ambiguous terms rather than “magic words,” but still enjoy the discretionary standard of review in court.
Two questions control whether the premium waiver applies in this case: (1) whether the company timely applied for the waiver of premiums on account of disability, and (2) whether Dr. Abatie was disabled for the entire time between when he quit working and when he died. If the premium waiver applies, then Dr. Abatie’s widow is entitled to $331,500 in life insurance under the group policy. If the waiver does not apply, she is not entitled.
In this case, a reasonable adjudicator could probably go either way on whether Dr. Abatie was disabled for the entire time after he stopped working, and on whether his insurer received the form required for a premium waiver. But if review is de novo, Dr. Abatie’s widow has established genuine issues of fact. The absence of the form in the insurance company records in this case is weaker evidence than usual, because the policy has bounced to three different insurers. The records therefore *977 may not have maintained their integrity and searehability through all those changes. I agree that the district court should make findings of fact based on the evidence to determine whether the company received the form and whether Dr. Abatie was continuously disabled up to his death. As with any de novo determination, the question for the district court should not be whether the insurance company went about its determination the right way, but rather whether the form was sent in and whether Dr. Abatie was disabled for the requisite period.
The majority’s elaborate construct for resolving cases with apparent conflicts of interest is not practical and adds unpredictability to group insurance determinations. Unpredictability in group insurance determinations is a very bad thing. It means that more health care and disability money has to be spent on claims processing instead of health care and disability payments. And it means that people fighting over amounts too small to justify hiring a lawyer will get close questions resolved against them.
Further, it is impossible as a practical matter to identify conflicts of interest in the manner the majority suggests. It is often difficult even for the insurance company to figure out what its interest is, let alone for someone else to do it. Claim supervisors differ sharply in their philosophies and, when marketing people are thrown into the mix, the company often finds identifying its own interest to be a conundrum. A so-called independent administrator may have much more of an incentive to decide against claimants than an insurance company spending “its own money.” Independent administrators may want to show how tough they are on claims to better market their services to self-insured employers. An insurance company may have an incentive to be more liberal than is appropriate because its experience-based premiums amount to a cost-plus contract, such that the more it spends, the more it makes. An employer that controls the administration of its group plans may have incentives to slant its decisions in favor of coverage in close cases. Even though that will be money out of its pocket, the employer may want to make working there attractive by means of a reputation for good medical coverage. Or it may seek to discourage unionization by providing benefits more liberally than union plans. Or the employer may insist upon liberal administration out of altruism. Or because the risk management department chief has a sick child. We in the court system will never know whether there is a conflict of interest in the sense addressed by the majority opinion.
Courts have fallen into the unfortunate habit in ERISA cases of focusing entirely on the standard of review. We treat abuse of discretion review as though it means the claimant loses, which is not necessarily so. And we treat.de novo review as though it means the claimant wins, which is also not necessarily so. The focus should be on whether the claimant is entitled to the claimed benefits. Today’s decision adds uncertainty.

. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir.1999) (en banc).

. Ingram v. Martin Marietta, 244 F.3d 1109, 1112 (9th Cir.2001).

. Id. at 1112.

. See Majority Op. at 963.

. See Ingram, 244 F.3d at 1112-13 ("An allocation of decision-making authority to [the administrator] is not, without more, a grant of discretionary authority in making those decisions.”).

. See Kearney, 175 F.3d at 1090 ("Only by excluding alternative readings as unreasonable could we conclude that the conferral of discretion is unambiguous.”).

. See Model Act 42 "Prohibition on the Use of Discretionary Clauses Model Act," NAIC 42-1 (2006).

. See id. at § 4(A) ("No policy, contract, certificate or agreement offered or issued in this state by a health carrier to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this state.”).

. See, e.g., Me.Rev.Stat. Ann. tit. 24-A § 4303(11).

. See Letter Opinion per CIC § 12921.9: Discretionary Clauses (February 26, 2004), available at http://www.msurance.ca.gov/0200-industry/ 0300-insurers/ 0200-bulletins/bulletin-notices-commiss-Opinion/upload/ Opinion-February-26-2004.pdf (last visited July 11, 2006); see also Mitchell v. Aetna Life Ins. Co., 359 F.Supp.2d 880, 888-89 (C.D.Cal.2005) (describing opinion).