**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLA SAMMONS, | No. 16-35288 |
| Plaintiff-Appellant, | DC No. CV 15-1703 SI |
| v. | |
| REGENCE BLUECROSS BLUESHIELD OF OREGON; OREGON BAKERS UNION TRUST FUND; BOARD OF TRUSTEES, OREGON BAKERS UNION TRUST FUND, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 14, 2018
Portland, Oregon

Before:    TASHIMA, McKEOWN, and PAEZ, Circuit Judges.

---

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff-Appellant Carla Sammons ("Sammons") appeals from the judgment entered in favor of Defendants-Appellees ("Defendants"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Sammons was a beneficiary under a medical benefits plan governed by The Employee Retirement Income Security Act ("ERISA"). Defendants are the plan's sponsor, administrator, insurer, and claims administrator. Sammons sought reimbursement for an artificial disc replacement surgery ("the surgery") that she underwent to address her degenerative disc disease. Defendants denied coverage for the surgery on the grounds that it fell under the plan's "investigational" exclusion. After a bench trial, the district court concluded that the surgery was not covered, agreeing that it fell under the investigational exclusion.

The parties agree that the denial of benefits is reviewed *de novo* because the plan does not give the administrator discretionary authority to construe the plan terms or determine eligibility for benefits. *See Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 (9th Cir. 2006). "Where, as here, a district court has conducted a *de novo* review of an ERISA plan administrator's decision, we review the court's factual findings only to determine whether they are 'clearly erroneous.'" *Id.* at 732–33 (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) (en banc)).

**1.** The plan language is unambiguous. *See Deegan v. Cont'l Cas. Co.*, 167 F.3d 502, 507 (9th Cir. 1999). To avoid the investigational exclusion, the scientific evidence had to permit conclusions about the overall impact of the surgery, such as its net effect on Sammons' degenerative disc disease and her quality of life, and had to show the effectiveness of the surgery as compared to established alternatives. The unambiguous intent was thus to exclude a procedure whose net impact remained uncertain.

The plan contains no explicit time frame for when these metrics must be shown. However, this does not mean there is no durational requirement, or that conclusions about this particular surgery in the "short term" are sufficient. That evidence shows a procedure to be beneficial some time after it is completed does not mean that this evidence permits the conclusions required under the plan's terms.

Indeed, the absence of an explicit time requirement here is by necessity. The exclusion is written generally to apply to a breadth of procedures, each with its own body of scientific evidence detailing when conclusions can be drawn about the procedure's effect on a patient's overall health and when its performance can be compared to established alternatives. The district court therefore correctly concluded that the investigational exclusion unambiguously applies when a lack of

evidence at a meaningful benchmark hinders the ability to draw these conclusions required under the terms of the plan.

**2.** The district court's finding that 5 years is the relevant benchmark for this surgery was not clearly erroneous. This finding was based on the Defendants' manual, which relied on medical evidence and the fact that the Food and Drug Administration's approval was conditioned on the submission of 5-year follow-up data to evaluate the surgery's long-term safety and efficacy. The district court's finding also relied on the opinion of an independent medical reviewer who confirmed that, given the special nature of spinal surgery, the overall impact of this surgery and its comparative efficacy remains unclear without reliable long-term data.

Sammons objects to the district court's weighing of the evidence; however, determining how to weigh evidence and resolve conflicts are within the province of the court when it sits as fact finder. *See Silver*, 466 F.3d at 735; *see also Kearney*, 175 F.3d at 1095. Moreover, Sammons has not shown that the evidence submitted by Defendants must categorically be afforded less weight because it relied on or summarized scientific evidence, and was not itself scientific evidence as defined under the plan. Regardless, Sammons fails to point to any evidence that she submitted that directly rebuts the court's finding.

Contrary to Sammons' assertions, then, the district court did conduct a *de novo* review; examining and relying on the evidence in the administrative record submitted by the Defendants is not the same as deferring to the Defendants' ultimate decision.  Even after scrutinizing the record here, we are not left with a definite and firm conviction that the district court committed an error of judgment in finding that reliable evidence at 5 years is required to assess this surgery's safety and efficacy.  *See Silver*, 466 F.3d at 733, 735.  Instead, some of the scientific evidence that Sammons submitted even seems to support this finding.

**AFFIRMED.**[1]

---

[1]  Because we affirm the district court's judgment, we need not reach Sammons' claim that she is entitled to attorney's fees.

*Sammons v. Regence Blue Cross Blue Shield of Oregon*, No. 16-35288

PAEZ, Circuit Judge, dissenting:

We have firmly recognized that an "insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence." *Kunin v. Benefit Tr. Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir. 1990). Thus, if "there exists a reasonable interpretation of the [health insurance] Plan that covers [artificial disc replacement], . . . the existence of such a reasonable interpretation means that, even if contrary reasonable interpretations exist, a jury would be required to adopt the one that favors coverage for the insured." *Simkins v. NevadaCare Inc.*, 229 F.3d 729, 737 (9th Cir. 2000).

I agree with the majority that Regence's interpretation of the plan language—that artificial disc replacement (ADR) surgery is investigational until and unless studies show success at five years out—is reasonable. But I part ways with the majority because Regence's interpretation is not the *only* reasonable interpretation. A "person of average intelligence and experience" reading the plan terms for their "ordinary and popular" meaning would not conclude that the plan language here unambiguously conveys a specific long-term benchmark, let alone a particular 5-year benchmark for spinal surgery. *See Simkins*, 229 F.3d at 734–35

1

(citations and alterations omitted). I certainly cannot say that "any other interpretation [besides Regence's] would be strained" or would require "tortur[ing] or twist[ing] the language of the policy." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990). Here, the plan language could reasonably be interpreted to cover ADR, necessitating summary judgment in favor of Sammons—not Regence.

While Regence's protests about the difficulty of drafting the investigational language with greater specificity are well-taken, our case law squarely places that burden on Regence, not on the insured. *See Simkins*, 229 F.3d at 736 ("If NevadaCare wishes to exclude coverage of a procedure such as HDC/PSCR from its insurance plans, it should do so conspicuously and unambiguously so a reasonable insured can determine this fact by looking at her policy."); *see also Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1263 (3d Cir. 1993) ("[H]ad Belden & Blake wished to limit the analysis this way, it could have so defined 'experimental' in the plan."). Sammons could not have determined the lack of coverage for ADR by reading her policy, and should not suffer for the challenges Regence faces in drafting policy language. *See Simkins*, 229 F.3d at 736.

Because I would reverse and remand to the district court with instructions to enter summary judgment in favor of Sammons, I respectfully dissent.